UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HANNON'S, INCORPORATED, Derivatively on Behalf of H.J. HEINZ COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BERKSHIRE HATHAWAY INC., 3G CAPITAL MANAGEMENT, LLC, WILLIAM R. JOHNSON, CHARLES E. BUNCH, LEONARD S. COLEMAN, JR., JOHN G. DROSDICK, EDITH E. HOLIDAY, CANDACE KENDLE, FRANCK J. MOISON, DEAN R. O'HARE, NELSON PELTZ, DENNIS H. REILLEY, LYNN C. SWANN, THOMAS J. USHER and MICHAEL F. WEINSTEIN,<br><br>Defendants,<br><br>and<br><br>H.J. HEINZ COMPANY, a Pennsylvania corporation,<br><br>Nominal Party. | Civ. Action No.<br><br>DERIVATIVE ACTION<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, ABUSE OF CONTROL AND GROSS MISMANAGEMENT<br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, by counsel, alleges as follows:

## SUMMARY OF THE ACTION

1.    This is a shareholder derivative action brought by a shareholder of nominal defendant H.J. Heinz Company ("Heinz" or the "Company") on behalf of Heinz and against Heinz's Board of Directors (the "Board"), Berkshire Hathaway Inc. and 3G Capital Management, LLC ("3G Capital") for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to Berkshire Hathaway and 3G Capital, pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). Berkshire Hathaway and 3G Capital aided and abetted these breaches of fiduciary duty. This action seeks equitable relief only.

2.    Heinz, headquartered in Pittsburgh, Pennsylvania, is the most global of all U.S.-based food companies. Famous for its iconic brands on six continents, Heinz provides delicious, nutritious and convenient foods for families in 200 countries around the world. In more than 50 of those countries, Heinz enjoys the number one or number two market position. Key Heinz markets are segmented as North American Consumer Products, U.S. Foodservice, Europe, Asia Pacific and the Rest of World. Throughout the world, Heinz is synonymous with ketchup. Heinz sells 650 million bottles of Heinz ketchup every year and approximately two single-serve packets of ketchup for every man, woman and child on the planet. Beyond ketchup, Heinz also markets an ever-expanding selection of other foods. Heinz core products include ketchup, sauces, meals, snacks, and infant/nutrition.

3.    On February 14, 2013, Heinz, Berkshire Hathaway and 3G Capital announced that they had entered into a definitive merger agreement (the "Merger Agreement") under which Heinz would be acquired by Berkshire Hathaway and 3G Capital. Under the terms of the Merger Agreement, Berkshire Hathaway and 3G Capital will acquire all of the outstanding shares of Heinz common stock for a mere $72.50 per share.

4. The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Berkshire Hathaway and 3G Capital have the opportunity to acquire Heinz. The Proposed Acquisition is being driven by the Board and Company management, holders of over 5.6 million shares of the Company's outstanding stock. The Board and Company management support the Proposed Acquisition in order to secure liquidity for their illiquid holdings in the Company. From the sale of their illiquid block of shares in the Proposed Acquisition, the Board and Company management will receive more than *$400 million*. Defendant, Chief Executive Officer ("CEO") and Board Chairman William R. Johnson ("Johnson") alone stands to make $100 million from the company's buyout, according to *Bloomberg*.

5. Moreover, the Board agreed to deliver the Company to Berkshire Hathaway and 3G Capital in order to secure special, material benefits for themselves as a result of the Proposed Acquisition, including the accelerated vesting and monetization of the Board members' and management's unvested holdings in the Company, which will provide millions of dollars in gains to the Board members and Heinz's management. In addition, Company management will also be handsomely rewarded with millions more in special change-in-control benefits if the Proposed Acquisition closes.

6. The Proposed Acquisition significantly undervalues Heinz. Due in no small part to the Company's recent strong growth, just a week ago the stock hit an all-time high of $61 per share, having risen almost 5% this year and nearly 12% since the beginning of 2012. Heinz boosted sales to $11.7 billion in fiscal 2012, a gain of 8.8% from the year before.

7. Most recently, on November 20, 2012, Heinz reported strong operating results for the second quarter of fiscal 2013, ended October 28, 2012. The Company reported double-digit earnings per share growth to $0.90 from continuing operations, and reaffirmed its previously announced fiscal 2013 full-year sales and profit outlook. Specifically, Heinz announced:

- Heinz delivered its 30th consecutive quarter of organic sales growth (volume plus price) of 3.3%.

- Reported sales grew 0.5% to $2.83 billion, despite a -2.4% foreign currency exchange impact.

- Emerging Markets delivered 13.2% organic sales growth (+10.3% reported) and represented 23% of total Company sales.

- Top 15 Brands delivered organic sales growth of 4.6% (+1.7% reported).

- Global Ketchup posted 5.0% organic sales growth (+3.8% reported).

- Net income grew 10.4% to $290 million (+22.3% reported).

*       *       *

- EPS grew 11.1% (+23.3% reported).

- On a constant currency basis, sales grew 2.9%, operating income increased 0.5% and EPS rose 13.6% . . . .

8.      On information and belief plaintiff alleges that to ensure Berkshire Hathaway and 3G Capital, and only Berkshire Hathaway and 3G Capital, acquire Heinz, defendants included several deal protection devices in the Merger Agreement.  These preclusive deal protection devices include:

(a)     a "no-solicitation" provision that precludes Heinz from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b)     an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide Berkshire Hathaway and 3G Capital with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential Company information;

(c)      an "information rights" provision that requires the Company to provide Berkshire Hathaway and 3G Capital with confidential, non-public information about competing proposals which Berkshire Hathaway and 3G Capital can then use to formulate a matching bid;

(d)      a "matching rights" provision that requires Heinz to provide Berkshire Hathaway and 3G Capital with the opportunity to match any competing proposal; and

(e)      a "termination fee" provision that requires Heinz to pay Berkshire Hathaway and 3G Capital tens of millions of dollars if the Proposed Acquisition is terminated in favor of a superior proposal.

9.      These onerous and preclusive deal protection devices operate conjunctively to make the Proposed Acquisition a *fait accompli* and ensure that no competing offers will emerge for the Company.  In combination and in total, the deal protection provisions in the Merger Agreement effectively preclude any other potential bidders from consummating an offer for the Company.

10.      In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Berkshire Hathaway and 3G Capital.  In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Heinz with Berkshire Hathaway and 3G Capital on terms preferential to Berkshire Hathaway and 3G Capital and defendants, and detrimental to Heinz.

11.      Plaintiff's allegations and the Board's actions demonstrate a specific showing that irreparable injury to the Company will result if plaintiff is required to make a demand upon the Board, therefore the demand is excused in this case.  Plaintiff seeks to enjoin the Proposed Acquisition.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Heinz's headquarters are located at One PPG Place, Suite 3100, Pittsburgh, Pennsylvania, and defendants include an officer and/or director who resides in Pennsylvania.

## PARTIES

15.     Plaintiff Hannon's, Incorporated is, and at all times relevant hereto was, a shareholder of Heinz.  Plaintiff is incorporated in the State of Maryland.

16.     Nominal defendant Heinz is a Pennsylvania corporation headquartered in Pittsburgh, Pennsylvania.

17.     Defendant Berkshire Hathaway engages in diverse business activities, including property and casualty insurance and reinsurance, utilities and energy, freight rail transportation, finance, manufacturing, retailing, and services.  Berkshire Hathaway is sued herein as an aider and abettor.  Defendant Berkshire Hathaway is incorporated in Delaware and is a resident of the State of Nebraska.

18.     Defendant 3G Capital is a global investment firm focused on long-term value, with a particular emphasis on maximizing the potential of brands and businesses.  Defendant 3G Capital's main office is in New York, New York.

- 5 -

19.     Defendant Johnson is and at all times relevant hereto has been Heinz's Chairman, President, CEO and a member of the Board.  Defendant Johnson is a resident of the State of Florida.

20.     Defendant Charles E. Bunch ("Bunch") is and at all times relevant hereto has been a member of the Board.  Defendant Bunch is a resident of the State of Pennsylvania.

21.     Defendant Leonard S. Coleman Jr. ("Coleman") is and at all times relevant hereto has been a member of the Board.  Defendant Coleman is a resident of the States of New Jersey and Florida.

22.     Defendant John G. Drosdick ("Drosdick") is and at all times relevant hereto has been a member of the Board.  Defendant Drosdick is a resident of the State of Pennsylvania.

23.     Defendant Edith E. Holiday ("Holiday") is and at all times relevant hereto has been a member of the Board.  Defendant Holiday is a resident of Washington, DC and the State of Florida.

24.     Defendant Candace Kendle ("Kendle") is and at all times relevant hereto has been a member of the Board.  Defendant Kendle is a resident of the State of Florida.

25.     Defendant Franck J. Moison ("Moison") is and at all times relevant hereto has been a member of the Board.  Defendant Moison is a resident of the State of New York.

26.     Defendant Dean R. O'Hare ("O'Hare") is and at all times relevant hereto has been a member of the Board.  Defendant O'Hare is a resident of the State of New Jersey.

27.     Defendant Nelson Peltz ("Peltz") is and at all times relevant hereto has been a member of the Board.  Defendant Peltz is a resident of the State of New York.

28.     Defendant Dennis H. Reilley ("Reilley") is and at all times relevant hereto has been a member of the Board.  Defendant Reilley is a resident of the States of Oklahoma and Florida.

29.     Defendant Lynn C. Swann ("Swann") is and at all times relevant hereto has been a member of the Board.  Defendant Swann is a resident of the State of Pennsylvania.

30. Defendant Thomas J. Usher ("Usher") is and at all times relevant hereto has been a member of the Board. Defendant Usher is a resident of the State of Pennsylvania.

31. Defendant Michael F. Weinstein ("Weinstein") is and at all times relevant hereto has been a member of the Board. Defendant Weinstein is a resident of the State of New York.

32. The defendants named above in ¶¶19-31 are sometimes collectively referred to herein as the "Individual Defendants."

## THE PROPOSED ACQUISITION

33. Heinz, headquartered in Pittsburgh, Pennsylvania, is the most global of all U.S.-based food companies. Famous for its iconic brands on six continents, Heinz provides delicious, nutritious and convenient foods for families in 200 countries around the world. In more than 50 of those countries, Heinz enjoys the number one or number two market position. Key Heinz markets are segmented as North American Consumer Products, U.S. Foodservice, Europe, Asia Pacific and the Rest of World. Throughout the world, Heinz is synonymous with ketchup. Heinz sells 650 million bottles of Heinz ketchup every year and approximately two single-serve packets of ketchup for every man, woman and child on the planet. Beyond ketchup, Heinz also markets an ever-expanding selection of other foods. Heinz core products include ketchup, sauces, meals, snacks, and infant/nutrition.

34. On February 14, 2013, Heinz, Berkshire Hathaway and 3G Capital announced that they had entered into the Merger Agreement under which Heinz would be acquired by Berkshire Hathaway and 3G Capital. Under the terms of the Merger Agreement, Berkshire Hathaway and 3G Capital will acquire all of the outstanding shares of Heinz's common stock for a mere $72.50 per share.

35. The press release announcing the Proposed Acquisition states in pertinent part:

**H.J. Heinz Company Enters Into Agreement to Be Acquired by Berkshire Hathaway and 3G Capital**

- Heinz shareholders to receive $72.50 per share in cash

- Transaction valued at $28 billion, largest ever in food industry

- Following the transaction, Heinz will remain headquartered in Pittsburgh as a private company

. . . H.J. Heinz Company today announced that it has entered into a definitive merger agreement to be acquired by an investment consortium comprised of Berkshire Hathaway and 3G Capital.

Under the terms of the agreement, which has been unanimously approved by Heinz's Board of Directors, Heinz shareholders will receive $72.50 in cash for each share of common stock they own, in a transaction valued at $28 billion, including the assumption of Heinz's outstanding debt. The per share price represents a 20% premium to Heinz's closing share price of $60.48 on February 13, 2013, a 19% premium to Heinz's all-time high share price, a 23% premium to the 90-day average Heinz share price and a 30% premium to the one-year average share price.

"The Heinz brand is one of the most respected brands in the global food industry and this historic transaction provides tremendous value to Heinz shareholders," said Heinz Chairman, President and CEO William R. Johnson. "We look forward to partnering with Berkshire Hathaway and 3G Capital, both greatly respected investors, in what will be an exciting new chapter in the history of Heinz. With Heinz stock recently at an all-time high and 30 consecutive quarters of organic topline growth, Heinz is being acquired from a position of strength. As a private enterprise, Heinz will have an opportunity to drive further growth and advance our commitment to providing consumers across the globe with great tasting, nutritious and wholesome products," added Johnson.

Warren Buffett, Chairman and CEO of Berkshire Hathaway said, "Heinz has strong, sustainable growth potential based on high quality standards, continuous innovation, excellent management and great tasting products. Their global success is a testament to the power of investing behind strong brand equities and the strength of their management team and processes. We are very pleased to be a part of this partnership."

Alex Behring, Managing Partner at 3G Capital said, "We have great respect for the Heinz brands and the strong business that management and its employees operate around the world. We approached Heinz to explore how we might work together to expand the value of this storied brand. We fully recognize Heinz's value and heritage and look forward to working together with Heinz's employees, suppliers and customers as we invest in and support the company's ongoing global growth efforts."

Understanding the need to preserve Heinz's values, heritage and community connections, Berkshire Hathaway and 3G Capital have pledged to maintain Pittsburgh as its global headquarters, and to fulfill and continue its philanthropic support of community initiatives and related investments.

The transaction will be financed through a combination of cash provided by Berkshire Hathaway and affiliates of 3G Capital, rollover of existing debt, as well as debt financing that has been committed by J.P. Morgan and Wells Fargo. Berkshire Hathaway owns and invests in leading businesses across a variety of industries, including numerous iconic brands. 3G Capital is a global investment firm focused on long-term value creation, with a particular emphasis on building and expanding great brands and businesses.

The transaction is subject to approval by Heinz shareholders, receipt of regulatory approvals and other customary closing conditions, and is expected to close in the third (calendar) quarter of 2013.

Advisors for this transaction include: Centerview Partners and BofA Merrill Lynch as financial advisors to Heinz and Davis Polk & Wardwell LLP as legal advisor to Heinz. Moelis & Company acted as advisors to the Transaction Committee of Heinz's Board of Directors and Wachtell, Lipton, Rosen & Katz served as legal advisor to the Transaction Committee of Heinz's Board of Directors.

Lazard served as lead financial advisor. J.P. Morgan and Wells Fargo also served as financial advisors to the investment consortium. Kirkland & Ellis LLP is acting as legal advisor to 3G Capital. Munger, Tolles & Olson LLP is acting as legal advisor to Berkshire Hathaway.

36. The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Berkshire Hathaway and 3G Capital have the opportunity to acquire Heinz. The Proposed Acquisition is being driven by the Board and Company management, holders of over 5.6 million shares of the Company's outstanding stock. The Board and Company management supported the Proposed Acquisition in order to secure liquidity for their illiquid holdings in the Company. From the sale of their illiquid block of shares in the Proposed Acquisition, the Board and Company management will receive more than *$400 million*. Defendant, CEO and Board Chairman Johnson alone stands to make $100 million from the Company's buyout, according to *Bloomberg*.

37. Moreover, the Board agreed to deliver the Company to Berkshire Hathaway and 3G Capital in order to secure special, material benefits for themselves as a result of the Proposed Acquisition, including the accelerated vesting and monetization of the Board members' and

- 9 -

management's unvested holdings in the Company, which will provide millions of dollars in gains to the Board members and Heinz's management. In addition, Company management will also be handsomely rewarded with millions more in special change-in-control benefits if the Proposed Acquisition closes.

38.     The Proposed Acquisition significantly undervalues Heinz. Due in no small part to the Company's recent strong growth, just a week ago the stock hit an all-time high of $61 per share, having risen almost 5% this year and nearly 12% since the beginning of 2012. Heinz boosted sales to $11.7 billion in fiscal 2012, a gain of 8.8% from the year before.

39.     Most recently, on November 20, 2012, Heinz reported strong operating results for the second quarter of fiscal 2013, ended October 28, 2012. The Company reported double-digit earnings per share growth to $0.90 from continuing operations, and reaffirmed its previously announced fiscal 2013 full-year sales and profit outlook. Specifically, Heinz announced:

- Heinz delivered its 30th consecutive quarter of organic sales growth (volume plus price) of 3.3%.

- Reported sales grew 0.5% to $2.83 billion, despite a -2.4% foreign currency exchange impact.

- Emerging Markets delivered 13.2% organic sales growth (+10.3% reported) and represented 23% of total Company sales.

- Top 15 Brands delivered organic sales growth of 4.6% (+1.7% reported).

- Global Ketchup posted 5.0% organic sales growth (+3.8% reported).

- Net income grew 10.4% to $290 million (+22.3% reported).

                              *        *        *

- EPS grew 11.1% (+23.3% reported).

- On a constant currency basis, sales grew 2.9%, operating income increased 0.5% and EPS rose 13.6% . . . .

40.     On information and belief, plaintiff alleges that to ensure Berkshire Hathaway and 3G Capital, and only Berkshire Hathaway and 3G Capital, acquire Heinz, defendants included several deal protection devices in the Merger Agreement.  These preclusive deal protection devices include:

(a)     a "no-solicitation" provision that precludes Heinz from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b)     an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide Berkshire Hathaway and 3G Capital with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential Company information;

(c)     an "information rights" provision that requires the Company to provide Berkshire Hathaway and 3G Capital with confidential, non-public information about competing proposals which Berkshire Hathaway and 3G Capital can then use to formulate a matching bid;

(d)     a "matching rights" provision that requires Heinz to provide Berkshire Hathaway and 3G Capital with the opportunity to match any competing proposal; and

(e)     a "termination fee" provision that requires Heinz to pay Berkshire Hathaway and 3G Capital tens of millions of dollars if the Proposed Acquisition is terminated in favor of a superior proposal.

41.     These onerous and preclusive deal protection devices operate conjunctively to make the Proposed Acquisition a *fait accompli* and ensure that no competing offers will emerge for the Company.  In combination and in total, the deal protection provisions in the Merger Agreement, effectively preclude any other potential bidders from consummating an offer for the Company.

42.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing owed to the Company, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Berkshire Hathaway and 3G Capital.

43.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Heinz with Berkshire Hathaway and 3G Capital on terms preferential to Berkshire Hathaway and 3G Capital and defendants, and detrimental to Heinz. Plaintiff seeks to enjoin the Proposed Acquisition.

## DEFENDANTS' FIDUCIARY DUTIES

44.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with the Company, and owe the Company a duty of highest good faith, fair dealing, loyalty, and independence.

45.     The claims are brought under Pennsylvania state law which requires every corporate director to act in good faith, in the best interests of the corporation and the corporation's shareholders, and to act with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  Where the officers and/or directors undertake a transaction that will result in either (i) a change in corporate control, (ii) a breakup of the corporation's assets, or (iii) sale of the corporation, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with their fiduciary duties, the directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase the corporation or its assets; or

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

46.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Heinz, are obligated to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation;

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders; and/or

(d)     unjustly entrenching themselves as managers and/or officers of the Company by failing to give adequate consideration to legitimate bids for the Company.

47.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to the Company. The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing and abusing their control of Heinz, and are obtaining for themselves personal benefits, including personal financial benefits, to the detriment of the Company.

## DERIVATIVE AND DEMAND ALLEGATIONS

48.     Plaintiff brings this action derivatively in the right and for the benefit of Heinz to redress injuries suffered, and to be suffered, by Heinz as a direct result of the breaches of fiduciary duty by the Individual Defendants.

49.     Plaintiff will adequately and fairly represent the interest of Heinz in enforcing and prosecuting its rights.

50.     Plaintiff is and was an owner of the stock of Heinz during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

51.     Plaintiff has not made a demand on the Board to file suit for the breaches of fiduciary duty alleged herein because such a demand would be a futile and useless act that would likely lead to Heinz suffering irreparable injury, particularly for the following reasons:

(a)     If plaintiff is required to make demand on the Board, Heinz would suffer irreparable injury were the Proposed Acquisition complained of herein consummated;

(b)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

(c)     Each member of the Board has been named as a defendant to this lawsuit;

(d)     In order to bring this suit, all of the directors of Heinz would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(e)     The acts complained of constitute violations of the fiduciary duties owed by Heinz's officers and directors and these acts are incapable of ratification;

(f)     Any suit by the directors of Heinz to remedy these wrongs would likely expose the Individual Defendants and Heinz to further civil actions being filed against one or more

- 14 -

of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(g)      The members of the Heinz Board, are directly or indirectly, the recipients of remuneration paid by the Company, including benefits, stock options, and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein, and are therefore incapable of exercising independent objective judgment in deciding whether to bring this action;

(h)      Because of their association as directors of the Company and their positions as present or former employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment; and

(i)      Heinz's current and past officers and directors are protected by directors' and officers' liability insurance against personal liability for their breaches of fiduciary duty alleged in this Complaint, which they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Heinz.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Individual Defendants in this case contain provisions which eliminate coverage for any action brought directly by Heinz against the Individual Defendants, known as, *inter alia*, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of Heinz, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and may provide a basis for the Company to effectuate recovery.  If there is no

coverage pursuant to directors' and officers' liability insurance, the defendant directors will not cause Heinz to sue them, since they will face a large uninsured liability.

52.     Plaintiff has not made any demand on shareholders of Heinz to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Heinz is a publicly traded company with approximately 320 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duties

53.     Plaintiff incorporates by reference and realleges each and every allegation set forth above.

54.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor, good faith, and independence owed to Heinz and have acted to put their personal interests ahead of the interests of Heinz.

55.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, have violated their fiduciary duties by entering into a merger transaction with Berkshire Hathaway and 3G Capital without regard to the fairness of the transaction to Heinz.

56.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor, and independence owed to Heinz because, among other reasons:

(a)     They failed to conduct a full and fair sales process for Heinz, thereby failing in their duty to properly maximize the value of Heinz common shares; and

(b)     They ignored or did not protect against the numerous conflicts of interest resulting from their various interrelationships and material insider benefits secured in the Proposed Acquisition.

57.     Because the Individual Defendants dominate and control the business and corporate affairs of Heinz, and are in possession of private corporate information concerning Heinz's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Heinz which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the detriment of Heinz.

58.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Heinz.

59.     The Individual Defendants are engaging in self dealing, are not acting in good faith toward Heinz, and have breached and are breaching the fiduciary duties owed to Heinz.

60.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to the Company, and may consummate the Proposed Acquisition without providing the Company a full and fair sales process.

61.     As a result of the Individual Defendants' actions, the Company has and will be irreparably harmed.

62.     The Company has no adequate remedy at law.

## COUNT II

### Against Defendants Berkshire Hathaway and 3G Capital
### for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties

63.     Plaintiff incorporates by reference and realleges each and every allegation set forth above.

64.     Defendants Berkshire Hathaway and 3G Capital aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the Company.

65.     The Individual Defendants owed to the Company certain fiduciary duties as more fully set forth above.

66.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Heinz.

67.     Defendants Berkshire Hathaway and 3G Capital colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to the Company.

68.     The Company has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment and preliminary and permanent relief, in favor of Heinz and against defendants, as follows:

A.     Declaring that this action is properly maintainable as a derivative action;

B.     Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties the defendants owed to the Company and is therefore unlawful and unenforceable;

C.     Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Board adopts and implements a fair sales process;

- 18 -

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Heinz and to refrain from entering into any transaction until a fair process is used to sell the Company;

E.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  February 15, 2013               LAW OFFICE OF
                                           ALFRED G. YATES, JR., P.C.


                                        /s Alfred G. Yates, Jr.
                                        Alfred G. Yates, Jr.
                                        Pa. I.D. No. 17419
                                        Gerald L. Rutledge
                                        Pa. I.D. No. 62027

                                        519 Allegheny Building
                                        429 Forbes Avenue
                                        Pittsburgh, PA 15219
                                        Telephone:  412/391-5164
                                        412/471-1033 (fax)
                                        yateslaw@aol.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

THE SHUMAN LAW FIRM
KIP B. SHUMAN
885 Arapahoe Avenue
Boulder, CO  80302
Telephone:  303/861-3003
303/484-4886 (fax)

Attorneys for Plaintiff

**VERIFICATION**

I, GEORGE JOSEPH HANNON, as President of HANNON'S, INCORPORATED, hereby verify that I am familiar with the allegations in the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duties, Abuse of Control and Gross Mismanagement ("Complaint"), and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

HANNON'S, INCORPORATED

DATED: February 5, 2013          By: _____
George Joseph Hannon, President